Modie J. Spiegel, Jr. v. Commissioner.
Spiegel v. Commissioner
Docket No. 1250.
United States Tax Court
1945 Tax Ct. Memo LEXIS 338; 4 T.C.M. (CCH) 74; T.C.M. (RIA) 45032; January 19, 1945
Harry Thom, Esq., 231 S. LaSalle St., Chicago, Ill., for the petitioner. Charles J. Munz, Esq., for the respondent. STERNHAGEN The Commissioner determined deficiencies of $1,538.87, $1,942.69 and $3,848.64 in income taxes for 1938, 1939 and 1940, as the result of the inclusion in petitioner's gross income of income from property transferred *339 by him in trust for his two children. All the facts are stipulated. Findings of Fact The petitioner is a resident of Glencoe, Illinois, and filed his income tax returns on the cash basis at Chicago. He has two children, born in 1930 and 1927, respectively. On October 14, 1935, petitioner executed two trust indentures, naming himself as trustee, in one of which his son was beneficiary and in the other his daughter. The indenture for the son provided, inter alia, as follows: "The Settlor hereby assigns, transfers and sets over unto the Trustee, and his successors, all of the right, title and interest of the Settlor in and to the property described in Schedule "A" hereto attached and made a part hereof, and all other property which may hereafter be added thereto, to have and to hold unto the Trustee, his successors and assigns, in trust, for the following uses and purposes: "1. To expend so much of the net income derived from said trust estate for the education, support, maintenance, enjoyment, and for any other purpose deemed by such Trustee beneficial to EDWARD JOSEPH SPIEGEL, a son of the Settlor, (hereinafter called the "Beneficiary"), until said Beneficiary shall reach *340 the age of twenty-five (25) years, as the Trustee may in his sole discretion determine and to accumulate the remainder of said income during such period, and when said Beneficiary reaches the age of twenty-five (25) years to pay over and distribute to him said trust estate, together with any accumulated income thereon. "2. If the Beneficiary shall die before reaching the age of twenty-five (25) years, then the Trustee may at any time and from time to time after the death of the Beneficiary, and until final distribution of the trust estate, in the Trustee's discretion, pay to his issue (or such of his issue as the Trustee may select), from time to time surviving, so much of the net income of the trust estate as the Trustee may deem advisable, or expend for the education, support, maintenance and enjoyment of such issue, or for any other purpose which the Trustee may deem beneficial to such issue, so much of such net income as the Trustee may see fit, and shall accumulate the remainder of such net income of the trust estate and add it to the principal of the trust estate, and when the Beneficiary would have attained the age of twenty-five (25) years of living, the Trustee shall divide *341 the trust estate per stirpes among his issue then surviving. * * * * *
"4. If at any time, or from time to time, in the judgment of the Trustee, the income payable hereunder shall be insufficient to provide for the proper education, support, maintenance and enjoyment of the Beneficiary, his issue, or any of them, or other descendants of the Settlor, or any of them, the Trustee, in his uncontrolled discretion, may then pay to the Beneficiary, his issue, or any of them, or other descendants of the Settlor, or any of them, as the case may be, such portion of the principal of the trust estate as the Trustee in his sole discretion shall deem necessary or advisable. "5. Notwithstanding anything to the contrary in this instrument contained, the trust created hereunder shall terminate not less than twenty-one (21) years after the death of the last survivor of the Settlor and his said children, Edward Joseph Spiegel and Barbara A. Spiegel, and if the trust hereby created has not sooner terminated the Trustee shall at such time distribute the trust estate, per stirpes, to the descendants of Edward Joseph Spiegel then surviving, and if there be no descendants of his surviving, then per *342 stirpes to the descendants then surviving of the Settlor. "6. Notwithstanding anything to the contrary in this instrument contained, none of the issues, rents, profits or produce of the trust estate shall be accumulated after the death of the Settlor, and if the Settlor shall die before the Beneficiary attains the age of twenty-five (25) years, or would, if living, have attained such age, then from the time of the death of the Settlor the net income of the trust estate shall be distributed until such final distribution of the trust estate to Edward Joseph Spiegel while he may be living, and if he shall die before final distribution of the principal of the trust estate, then to his issue, per stirpes, from time to time surviving, and if there be no such issue surviving, then per stirpes to the descendants of the Settlor from time to time surviving. "7. During the term of the trust hereby created, the Trustee shall manage and control the trust estate and every part thereof, and shall have full power to sell, exchange, assign, transfer and deliver the property and securities at any time constituting any part of the trust estate at such price or prices and at such time or times and *343 upon such terms as the Trustee may deem wise and for the best interest of the trust estate. The trustee shall have full power and authority to invest and reinvest any and all funds belonging to the trust estate from time to time whether arising from the sale, payment or redemption of or income from any of the property or securities belonging to or constituting any part of the trust estate, or otherwise, in such notes, bonds, stocks, mortgages, real estate, securities or other property, whether real, personal or mixed, and in such manner as in the sole judgment of the Trustee shall seem wise and proper. The Trustee shall have full power and authority to take advantage of any bond or stock subscription privileges which may at any time accrue to the holder or owner of any securities at any time constituting any part of the trust estate. The Trustee may have any certificates of stock held hereunder transferred into the name of the Trustee and shall have as full power and authority to vote in any manner as the Trustee deems proper any stock at any time constituting any part of the trust estate, and may execute and deliver any proxy or proxies for the voting of such stock, and in such event *344 shall have full discretion and powers with reference to the manner of voting the same as if the Trustee was the absolute owner and holder thereof. The Trustee shall have full power and authority to take all steps and proceedings in the name of the Trustee, either at law or in equity or otherwise, to enforce all rights of action arising out of or in connection with any notes, bonds, stocks, securities or property constituting any part of the trust estate, and to compound and compromise the same upon such terms and in such manner as in the judgment of the Trustee shall seem best. The Trustee shall also have full power to use any of the notes, bonds, stocks, securities or property belonging to the trust estate for the purpose of effecting such consolidations, mergers, reorganizations and dissolutions as in the judgment of the Trustee may seem best. The Trustee in making investments or reinvestments shall not be subject to any limitations of investments by trustees imposed at any time by the laws of the State of Illinois, or any other State or by the United States. In the event the Trustee at any time elects to take advantage of any stock or bond subscription privilege or other rights *345 or privileges, for which purpose money is required to be paid by the Trustee, the Trustee is authorized and empowered to convert into cash such part of the trust estate as shall be necessary to produce a sufficient sum of money for such purposes or to borrow the requisite amount thereof, and in connection with such borrowing to pledge as collateral security therefor any notices, bonds, stocks, securities or other property constituting the trust estate. * * * * *
"9. The Trustee shall make all payments, both principal and income, provided for hereunder, to the respective beneficiaries hereunder, in person or upon their personal receipt, and the said beneficiaries shall have no power to anticipate the payment thereof, nor to assign, transfer, mortgage, encumber, or in any way pledge their interest or any part thereof in said trust, but all principal and income shall be held by the Trustee for the benefit of the respective beneficiaries as in this instrument provided, free and clear of all claims of creditors of the respective beneficiaries and of all other persons whomsoever." * * * * *
The trust for the benefit of the daughter was the same except that distribution of the *346 estate and accumulated income was not to be made until she reached the age of 30 years. The petitioner transferred to himself as trustee for each of the trusts 500 shares of Spiegel, May, Stern Company, Inc., a Delaware corporation. On or about October 14, 1935, certificates in the name of petitioner were surrendered to the corporation and new certificates were issued in his name as trustee for his son and daughter, respectively. He made additional transfers to the two trusts as follows: Son
Daughter
Dec. 19, 1935, Spiegel, May, Stern Co., Inc.
500 shares common
Dec. 26, 1935, Spiegel, May, Stern Co., Inc.
500 shares common
Dec. 6, 1935, Spiegel, May, Stern Co., Inc.
45 shares common
Dec. 9, 1935, Spiegel, May, Stern Co., Inc.
45 shares common
April 7, 1937, Cash
$5,000
$5,000
Dec. 27, 1940, Spiegel, Inc.
500 shares common
500 shares common
From time to time as trustee petitioner purchased securities, which were issued in his name as trustee, although in some instances the securities were issued in the name of the son or daughter for convenience of transfer. In no instances was any security carried in the individual name of petitioner. *347 Petitioner borrowed from each trust and repaid the loans as follows: Borrowed
Trust
Amount
Repaid
Amount
Dec. 4, 1937
Edward Joseph Spiegel
$20,000
Dec. 19, 1938
$ 3,500
April 9, 1943
16,500
Dec. 4, 1937
Barbara A. Spiegel
20,000
Dec. 19, 1938
2,500
April 9, 1943
17,500
Sept. 12, 1938
Edward Joseph Spiegel
2,000
Dec. 19, 1938
Sept. 12, 1938
Barbara A. Spiegel
3,000
Dec. 19, 1938
Sept. 11, 1939
Edward Joseph Spiegel
3,000
April 9, 1943
Oct. 14, 1940
Barbara A. Spiegel
2,400
April 9, 1943
The loans were in each instance evidenced by promissory notes payable on demand with interest at 3 per cent, which interest was paid annually by petitioner. At all times while the loans were unpaid, the petitioner's net worth was in excess of $250,000. From time to time petitioner's father and mother, Modie J. Spiegel and Lena S. Spiegel, made gifts of common and preferred shares of Spiegel, May, Stern Co., Inc., to each of the above trusts as follows Edward Trust
Barbara Trust
1935 Modie J. Spiegel 70 shares common 70 shares common
1935 Lena S. Spiegel 70 shares common 70 shares common
1936 Modie J. Spiegel 27 shares common 28 shares common
1936 Lena S. Spiegel 23 shares common 23 shares common
1937 Modie J. Spiegel
375 shares preferred
375 shares preferred
*348 The income during 1938, 1939 and 1940, from the above property donated to the trusts by the father and mother was not included by the Commissioner in the income of the petitioner for such years but was treated as taxable to the trustee. Separate "special" bank accounts were opened by petitioner on November 6, 1935, in the name of his son and his daughter, and all cash receipts and disbursements for each trust were deposited or made in or from such accounts. From October 14, 1935, to April 9, 1943, the securities of each trust were kept in a safedeposit vault located in Central Manufacturing District Safe Deposit Co., in the name of F. W. Spiegel Corporation, in separate containers marked with the name of the beneficiary. On April 9, 1943, petitioner as trustee opened two agency accounts in the American National Bank & Trust Company of Chicago in his name as trustee and thereafter all securities held by him as trustee were deposited in such accounts. Separate books of account were opened on or about October 14, 1935, for each trust and were maintained and kept during the taxable years on the cash basis. On February 26, 1936, the petitioner filed a gift tax return for the calendar *349 year 1935 at Chicago in which he reported the gift of 1,000 shares of Spiegel, May, Stern Co., Inc., to the two trusts, and paid the tax of $3,356.25 shown thereon. The additional property transferred by him to such trusts was likewise reported by him except where such amounts were less than the statutory exclusions. Any gift tax shown as due was paid. All the income attributable to the property transferred by petitioner to the two trusts was treated by the Commissioner as taxable to petitioner. Such income is as follows: Edward Trust
Barbara Trust
Ordinary
Capital
Ordinary
Capital
Year
Income
Loss
Total
Income
Loss
Total
1938
$1,775.00
$1,775.00
$1,803.77
$1,803.77
1939
2,604.88
$310.16
2,294.72
2,654.40
$317.69
2,336.71
1940
3,566.25
3,566.25
3,577.27
3,577.27
Federal income tax returns were filed on the cash basis for each trust during the taxable years, and all the taxable income of the trust was included; and the trustee paid the income tax thereon, which has never been refunded. None of the income or corpus of either trust has ever been distributed or expended for the education, support, maintenance, *350 enjoyment, or any other purpose deemed by the trustee beneficial to his son or daughter. Spiegel, May, Stern Co., Inc., or its predecessor, was founded in 1893 by petitioner's father and uncle. It was incorporated on April 28, 1928, under the laws of Delaware and its name was changed on January 8, 1937, to Spiegel, Inc. On March 12, 1935, the corporation had 175,000 common shares outstanding, of which 90,713 were owned by members of the Spiegel family and 84,287 shares were owned by 554 shareholders not related to petitioner. Petitioner's father owned individually 41,100 shares and held 21,300 shares as trustee under trusts established by him in 1932 and 1934; petitioner's mother held 13,000 shares, petitioner owned 5,130 shares, his brother, Frederick W., held 5,000 shares and his brother, John P., held 2,500 shares. The number of common shares outstanding, the number held by the Spiegel family and the number held by unrelated shareholders were as follows: Shareholders not related
Total shares
Shares held by
to petitioner: outstanding
Spiegel family
No. of shares
No. of holders
February 25, 1936
182,876
89,059
93,817
637
March 10, 1937
* 1,265,000
391,455
873,545
1,612
March 7, 1938
1,275,658
367,430
908,228
4,460
March 4, 1939
1,275,658
372,430
903,228
4,567
February 15, 1940
1,275,658
372,745
802,913
4,864
*351 From 1935 to 1940, petitioner's father was chairman of the board of directors of the corporation. In 1935, petitioner was executive vice-president and treasurer of the corporation, in 1936 he became one of four vice-presidents and in 1939 and 1940 he was president of the corporation. During all the taxable years, petitioner, his father and brother, Frederick W., were directors of the corporation. During the years 1935 to 1940, the petitioner received compensation from the corporation: 1935
$48,000.00
1936
75,000.00
1937
75,000.00
1938
64,375.50
1939
60,000.00
1940
60,000.00 No dividends were paid by the corporation on its common shares from 1931 to 1934, inclusive. Thereafter, dividends per share were paid: 1935
$ .75
1936
5.00
1937
1.00
1938
.25
1939
.30
1940
.60
Memorandum Opinion STERNHAGEN, Judge: The Commissioner based his determination upon the holding that the trusts created by the petitioner in 1935 were not "genuine trusts recognizable under" the revenue act; that petitioner remained "in substance the owner of the corpus", and that the income thereform attributable *352 to the part of the corpus which petitioner had contributed was taxable to him under Section 22 (a). To support this determination, it is argued that petitioner, who was the settlor and the trustee, had such broad powers of control over the trust property and the income as to amount to substantial ownership, as in . The powers referred to and the actual exercise thereof are stated to be that the petitioner could, in his uncontrolled discretion, either use the income for the education of the children or accumulate it, and that he chose to accumulate it and make no distribution or expenditure for the children, but individually to borrow from the trust at a low rate of interest, - 3 per cent - although he was a man of wealth and had large earnings as an officer of the Spiegel Corporation; that the bank accounts were not set up as trust accounts and the shares were not set aside as identifiable trust property; that he was careful to retain freedom from the fiduciary restriction of investment ordinarily imposed by the Illinois law; that even though he was trustee, he neverthelss did not diminish his influence in the affairs of the Spiegel Corporation. *353 The trust income imputed to the petitioner did not include the income which was attribuable to the contributions of corpus made by petitioner's father and mother, and the Commissioner apparently concedes that to that extent the trust must be recognized as genuine. We are unable to adopt the inference that the trusts were not genuine or that the corpus and income in the taxable years were in reality and substance owned by the petitioner. Other than the borrowing by petitioner from the trusts, the evidence discloses nothing to indicate any departure from ordinary conduct as a fiduciary. The explanation for the loans or the use made by petitioner of the amounts borrowed is not shown by the evidence; and it cannot be found that they indicated that petitioner regarded himself as in substance the owner, although there is no doubt that such borrowing by the trustee was a viollation of his duty as a fiduciary. However censurable such conduct might have been, no remedy lies in treating it for tax purposes as an exercise by the trustee of the rights of an owner of the trust corpus from which the money was borrowed or refusing to recognize the trust as such. The loan was not of a large part *354 of the trust corpus, and was repaid; and meanwhile the income from the shares was credited to the trust and deposited in the "Special Account", which was identifiably maintained for each trust. The Commissioner's refusal to recognize the trust was, in our opinion, incorrect and the trust income may not be included in the petitioner's individual gross income for any of the years 1938, 1939 and 1940. See (1/16/45). There was a question as to whether the income was taxable to petitioner under Section 167 (c) because, under , it could have been used by him to discharge his parental obligation. That question however vanished under Section 134, Revenue Act of 1943, provided petitioner filed the consents contemplated by that statute. In his reply brief petitioner says he has now filed such consents, but since the Commissioner has remained silent on the subject. Decision will be entered under Rule 50. Footnotes
*. On January 2, 1937, the shares were split 5 for 1.↩